# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# EUGENE DIVISION

| | | |
|---|---|---|
| **JULIE E. HUDSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:11-cv-06400-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____) | | |

Allison B. Lesh, Moore, Jensen & Lesh, P.O. Box 7788, Springfield, OR 97475.  Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Roberta G. Bowie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202.  Attorneys for Defendant.

**SIMON, District Judge**.

Julie Hudson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Because the Commissioner's decision was supported by substantial evidence, the decision is AFFIRMED.

## I.    BACKGROUND

### A.    The Application

Ms. Hudson is a 51 year-old woman with a high school diploma and some post-secondary education.  Her employment history includes work as a church secretary, a waitress, and a grocery store clerk.  She filed an application for DIB on October 20, 2008, alleging disability due to lupus, fibromyalgia, and bi-polar disorder. Tr. 145.  The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 11.  After an administrative hearing, held on October 22, 2010, the ALJ found Ms. Hudson not to be disabled.  Tr. 20.  The Appeals Council denied Ms. Hudson's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1.  Ms. Hudson now seeks judicial review of that decision.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20

C.F.R. § 404.1520 (DIB); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Each step is potentially

dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following

series of questions:

1.  Is the claimant performing "substantial gainful activity?"  20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit.  20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. § 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. § 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

Page 3 – OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d

at 1099.

## C.    The ALJ's Decision

The ALJ performed the sequential analysis.  At step one, he found that Ms. Hudson had

not engaged in substantial gainful activity since January 1, 2009.  Tr. 13.  At step two, the ALJ

concluded that Ms. Hudson had the following severe impairments: systemic lupus erythematosus

("SLE") and bipolar disorder.  *Id.*  At step three, the ALJ determined that Ms. Hudson did not

have an impairment or combination of impairments that met or medically equaled a listed

impairment.  Tr. 14.

The ALJ next assessed Ms. Hudson's residual functional capacity ("RFC") and found

that Ms. Hudson could perform light work with some exceptions, and unskilled work. Tr. 15.  At

step four, the ALJ found that Ms. Hudson was unable to perform any past relevant work.  Tr. 18.

At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that

Ms. Hudson could perform jobs that exist in significant numbers in the national economy,

including wire worker, assembler, and cleaner.  Tr. 19.  The ALJ thus ruled that Ms. Hudson was not disabled.  Tr. 20.

## II.     STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## III.     DISCUSSION

Ms. Hudson argues that the ALJ erred by: (1) improperly rejecting the opinion of a treating physician, Dr. Robert Law; (2) improperly rejecting Ms. Hudson's subjective symptom

testimony; and (3) improperly rejecting lay testimony of a former employer, Mr. Allen Chaney.

The Court finds that the ALJ's decision was supported by substantial evidence in the record and

affirms the Commissioner's decision.

**A.      Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).  The

Ninth Circuit distinguishes between the opinions of three types of physicians:  treating

physicians, examining physicians, and non-examining physicians.  The opinions of treating

physicians are generally accorded greater weight than the opinions of non-treating physicians.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not

contradicted by the opinion of another physician can be rejected only for "clear and convincing"

reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ

must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In addition, the ALJ generally must

accord greater weight to the opinion of an examining physician than that of a non-examining

physician.  *Lester*, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the

ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an

examining physician is contradicted by another physician's opinion, the ALJ must provide

"specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester*, 81 F.3d

at 830.  Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1034 (9th Cir. 1995).

Ms. Hudson argues that the ALJ did not provide legally sufficient reasons for rejecting Dr. Law's 2009 opinion letter. The Court rejects that argument. Dr. Law treated Ms. Hudson for more than fifteen years. Tr. 420. In that 2009 letter, Dr. Law stated that, based on the severity of her SLE, Ms. Hudson "would not be employable on a full or even part-time basis." Tr. 340. Dr. Law also opined that Ms. Hudson was unable to sustain concentration and had difficulty handling objects. *Id*. In addition, Dr. Law stated that Ms. Hudson's SLE restricts her ability to walk, lift, and carry objects. *Id*.

The ALJ accorded "little weight" to Dr. Law's 2009 opinion letter. The ALJ noted that the letter was controverted by three other physicians who each opined that Ms. Hudson was able to work in some capacity. Tr. 17. Dr. Martin Kehrli, the State agency's reviewing physician, opined that Ms. Hudson could perform within a light RFC. Tr. 394. The ALJ credited Dr. Kehrli's opinion because he relied on evidence not considered by Dr. Law, including Ms. Hudson's self-reported activities and Dr. William Maier's specific clinical findings and opinion.

A second reviewing physician, Dr. Dorothy Anderson, evaluated the medical evidence and found no significant physical limitations. Tr. 333. Finding no new evidence to support a change in this determination, a third reviewing physician, Dr. Paul Rethinger, confirmed Dr. Anderson's assessment. Tr. 386. Because Dr. Law's opinion was controverted, the ALJ was only required to provide specific, legitimate reasons for rejecting it. *Lester*, 81 F.3d at 830-31.

The ALJ found that Dr. Law's opinion was inconsistent with evidence in the record regarding Ms. Hudson's activities and travel.  Tr. 18.  Ms. Hudson stated that her daily activities included walking her dogs, working on projects outside, cooking, and doing household chores. Tr. 169, 171.  After her alleged onset date, Ms. Hudson also traveled to Connecticut for a month to visit her mother, and traveled to Utah for a week with her husband.  Tr. 367, 404.  These activities contravene Dr. Law's opinion that Ms. Hudson "would not be employable."  Indeed, Ms. Hudson testified that at the time of the hearing she had a job working part-time as a checkout clerk at a grocery store.  Tr. 35-36.  Even though Ms. Hudson's work activity does not rise to the level of "substantial, gainful activity," it contradicts Dr. Law's statement that Ms. Hudson was completely unable to work.  The ALJ thus properly accorded diminished weight to Dr. Law's opinion, based on inconsistencies with other evidence in the record.  20 CFR § 404.1527(c)(2) (a medical opinion that is inconsistent with the record as a whole is accorded less weight).  In sum, the ALJ thus provided specific, legitimate reasons for rejecting Dr. Law's opinion.

The ALJ also discredited Dr. Law's opinion because the ALJ found that it conflicted with his treatment notes from 2009 and 2010.  Dr. Law's treatment notes stated, in part, that Ms. Hudson's SLE had been stable, that she did not take medication, and that she was "able to tolerate usual activities and did not have major flares of SLE except for one episode."  Tr. 343, 401.  After reading the ALJ's decision, Dr. Law opined in a letter that the ALJ had misinterpreted his treatment notes and that they were, in fact, consistent with his 2009 opinion letter.  Although this evidence was not before the ALJ, it was accepted by the Appeals Council into the record.  Tr. 5, 420-421.

Page 8 – OPINION AND ORDER

Even assuming that the ALJ misinterpreted Dr. Law's treatment notes, the ALJ's

rejection of Dr. Law's opinion was legally sound. As discussed above, the ALJ made specific

findings showing inconsistency between Dr. Law's opinion and other evidence in the record,

including other medical opinions, evidence of Ms. Hudson's activities, including travel, and

evidence of her employment at the time of the hearing. The ALJ thus provided specific,

legitimate reasons for rejecting Dr. Law's controverted opinion. *See Carmickle*, 533 F.3d

at 1162 (a single erroneous basis for an ALJ's determination is harmless error if valid reasons

supporting that determination remain).

## B.    Credibility Determination

The Ninth Circuit has developed a two-step process for evaluating the credibility of a

claimant's own testimony about the severity and limiting effect of the claimant's symptoms.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether

the claimant has presented objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*,

504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her

impairment could reasonably be expected to cause the severity of the symptom she has alleged;

she need only show that it could reasonably have caused some degree of the symptom." *Smolen*

*v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036. It is "not

sufficient for the ALJ to make only general findings; he must state which pain testimony is not

credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d

915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id*. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* Social Security Ruling 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Ms. Hudson argues that the ALJ improperly rejected her subjective symptom testimony. The Court rejects that argument. Ms. Hudson testified that she worked as a part-time grocery store clerk, five days per week, but that she misses three to four days of work per month due to fatigue and anxiety. Tr. 36, 45. She testified that her SLE caused fatigue that prevented her from working full-time. Tr. 37. She also testified that even if she did not have SLE, she would not be able to work due to anxiety caused by her bipolar disorder. *Id.*

The ALJ gave specific, clear and convincing reasons for discounting Ms. Hudson's testimony. First, the ALJ noted evidence in the record that conflicted with Ms. Hudson's testimony that her SLE prevented her from working. Ms. Hudson exhibited no physical distress or difficulty during a medical exam with Dr. Law and reported to Dr. Law that she can "tolerate usual activities." Tr. 401. Moreover, in 2010, Ms. Hudson reported that she had not experienced any major flares of SLE apart from one isolated incident. *Id*. Finally, the ALJ noted that there were few treatment records demonstrating that Ms. Hudson suffered significant limitations. After assessing this evidence, the ALJ concluded, "[i]f the claimant were as limited as alleged, one would expect to find more corroborating treatment records." Tr. 16. Because the ALJ made specific findings of inconsistencies within the record and explained his conclusion with respect to Ms. Hudson's credibility based on these inconsistencies, he provided clear and convincing reasons for rejecting her testimony. *See Smolen*, 80 F.3d at 1284.

Objective medical evidence in the record also supports the ALJ's finding regarding Ms. Hudson's physical limitation testimony. *See id.* (the ALJ may consider objective medical evidence and the claimant's treatment history in his credibility determination). Dr. Maier, a rheumatologist, reported in a "Progress Note" from 2007 that Ms. Hudson was doing well, and Dr. Maier found no evidence of an inflammatory process associated with SLE. Tr. 270.

Moreover, Dr. Law opined in 2009 that Ms. Hudson's SLE was "dormant clinically," Tr. 345,

and that she had only "mild ongoing SLE-related symptoms."  Tr. 343.

      The ALJ observed that Ms. Hudson sought conservative and infrequent treatment for her

SLE.  She testified that she does not take medication for SLE and only has annual checkups.

Tr. 40.  Evidence of conservative treatment is "sufficient to discount a claimant's testimony

regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); 20

C.F.R. 404.1529(c)(3) (the amount of treatment is "an important indicator of the intensity and

persistence of [claimant's] symptoms").

      The ALJ also observed that Ms. Hudson's daily activities undermined her claim that she

had severe physical limitations.  Tr. 17.  Ms. Hudson stated that her daily activities included

doing yard work, walking her dogs, working on building a retaining wall, and performing

household chores.  Tr. 169, 171.  Daily activities that are inconsistent with alleged symptoms are

a relevant credibility consideration.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  It

was reasonable for the ALJ to infer from Ms. Hudson's daily activities that she was not as

limited as her testimony indicated.

      Finally, the ALJ noted evidence in the record that contradicted Ms. Hudson's testimony

that her bipolar disorder prevented her from working.  First, treating physician Dr. James Martin

opined in 2008 and in 2009 that Ms. Hudson's bipolar disorder was in "good remission."

Tr. 361, 365, 370.  Second, Dr. Martin's treatment notes indicated that Ms. Hudson's symptoms

improved with adjustments to her medication.  Tr. 361-62.  Third, Ms. Hudson indicated to

Dr. Martin during exams that she was doing well and functioning normally.  Tr. 407.  She also

testified that her bipolar disorder was accurately described as in "good remission" in 2009,

despite some subsequent ups and downs, and adjustments to her medication.  Tr. 42.  The ALJ

reasonably inferred from this evidence that Ms. Hudson's mental limitations were not as severe as she indicated elsewhere in her testimony.

Ms. Hudson argues that the ALJ overlooked evidence that she was feeling "down" and, on one occasion "appear[ed] moderately depressed." The ALJ completed a Psychiatric Review Technique Form where he considered Ms. Hudson's "mental impairment." Tr. 14-15. Because there was no diagnosis of depression in the record and no attendant functional limitations, evidence that Ms. Hudson was feeling "down" and "appear[ed] moderately depressed" could not properly be incorporated into the RFC. *See* SSR 96-8 (In determining a claimant's RFC, an ALJ need only consider the "limitations and restrictions" imposed by the claimant's impairments). It was proper therefore for the ALJ not to mention this evidence, and to infer, based on the evidence as a whole, that Ms. Hudson's mental symptoms were not as severe as she testified. Thus, even if Ms. Hudson offers an alternate, rational interpretation of the evidence, the Court must uphold the ALJ's decision. *Andrews*, 53 F.3d at 1039-40 (the ALJ's decision must be affirmed if the record contains "relevant evidence [that] a reasonable mind might accept as adequate to support [the ALJ's] conclusion"); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Ms. Hudson also challenges other reasons provided by the ALJ for rejecting her testimony, including that she exaggerated her anxiety-related skin picking, and that her activities of daily living conflicted with her testimony. The ALJ found that Ms. Hudson's skin condition was not as severe as alleged in her testimony, based on a review of her treatment records. Tr. 16-17. Two separate treatment notes from Dr. Law noted "[n]o worrisome skin lesions." Tr. 343, 401. The ALJ's conclusion that Ms. Hudson's skin condition was not as severe as alleged was a

reasonable interpretation of the evidence.  The Court thus affirms the ALJ's credibility

determination.

## C.      Lay Testimony

The ALJ has must consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina*

*v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ must provide "germane reasons" when

rejecting lay testimony. *Molina*, 674 F.3d at 1114. The ALJ, however, is not required to address

each witness "on an individualized witness-by-witness basis" and may reject lay testimony

predicated upon reports of a claimant properly found not credible. *Id*.

Ms. Hudson argues that the ALJ gave insufficient weight to Ms. Hudson's former

employer, Allen Chaney.  Mr. Chaney testified that during Ms. Hudson's tenure, she had two

unscheduled absences per week.  Tr. 53.  Mr. Chaney testified that Ms. Hudson would spend

more than twelve hours completing an hour-long task.  Tr. 52.  He also testified that Ms. Hudson

was unable to complete even simple secretarial tasks on a regular basis and that he would

frequently observe her staring at her computer screen.  Tr. 54-55.

The ALJ assigned "partial weight" to Mr. Chaney's testimony because of a "lack of

corroborating objective evidence and other treatment notes."  Tr. 18.  Ms. Hudson argues that,

under *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009), the ALJ may not reject lay

testimony because it is uncorroborated by objective medical evidence.

There is some disagreement over the meaning and application of *Bruce*'s holding that an

ALJ may not reject lay testimony simply because it is uncorroborated by objective medical

evidence.  *See, e.g., Glover v. Astrue*, 835 F. Supp.2d 1003, 1009 (D. Or. 2011) ("Various district

courts in the Ninth Circuit have suggested that the . . . *Lewis/Bayliss* line of cases conflicts with

. . . *Bruce*"). *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), and *Lewis v. Apfel*, 236

Page 14 – OPINION AND ORDER

F.3d 503, 511 (9th Cir. 2001), held that an ALJ may discount lay testimony if it conflicts with the medical evidence. The *Lewis* court expressly stated that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." 236 F.3d at 511. This is consistent with SSR 88–13, which provides that the ALJ must consider lay testimony about pain symptoms precisely because such limitations are not always captured by the objective medical evidence. *See Glover*, 835 F.Supp.2d at 1006. SSR 88-13 suggests that lay testimony cannot be rejected simply because it is *uncorroborated* by the objective medical evidence; the ALJ, however, is permitted to reject lay testimony when it *conflicts* with the medical evidence. *See id.* at 1012.

Consistent with SSR 88-13, *Bruce* held that it was error for an ALJ to reject lay testimony from a witness regarding a claimant's limitations, when the reason provided by the ALJ for rejecting the testimony was lack of corroboration by objective medical evidence. *Bruce*, 557 F.3d at 1116. Here, the ALJ stated that a lack of corroborating medical evidence rendered Mr. Chaney's lay testimony "less persuasive." Tr. 18. Under *Bruce*, this was not a "germane reason" for rejecting Mr. Chaney's testimony. *Bruce*, 557 F.3d at 1116.

Nevertheless, the ALJ made other findings that were "arguably germane reasons" for rejecting Mr. Chaney's testimony. For example, Mr. Chaney testified that Ms. Hudson missed two days of work per week; this conflicted with Ms. Hudson's own statement that she had to miss only three to four days of work per month due to her condition. Tr. 36; *see Lewis*, 236 F.3d at 512 (noting "arguably contradictory" testimony in the record is a germane reason to reject a lay witness's testimony). To reject lay testimony, the ALJ need only provide "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to his determination. *Lewis*, 236 F.3d at 512. Unlike the ALJ in *Bruce*, the ALJ here had a

germane reason to reject Mr. Chaney's testimony.  Thus, there was legally sufficient reason for

the ALJ to reject Mr. Chaney's testimony, and the Court must uphold his decision. *See*

*Carmickle,* 533 F.3d at 1162.

## IV.    CONCLUSION

The ALJ provided legally sufficient reasons for rejecting Dr. Law's opinion, and for

discrediting testimony from Ms. Hudson and Mr. Chaney.  The Commissioner's decision that

Ms. Hudson is not disabled was supported by substantial evidence in the record and is therefore

AFFIRMED.

DATED this 15th day of March, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge